IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PAUL HUNT,

      Plaintiff,

v.                                                                 No. 1:16-cv-00272-MCA-KK

BOARD OF REGENTS OF THE UNIVERSITY
OF NEW MEXICO; SCOTT CARROLL, M.D., in his
individual and official capacities; JOHN DOE AND
JANE DOE MEMBERS OF THE COMMITTEE
FOR STUDENT PROMOTION AND EVALUATION,
in their individual and official capacities; TERESA A.
VIGIL, M.D., in her individual and official capacities;
PAUL ROTH, M.D., in his individual and official
capacities,

      Defendants.

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
## OR FOR SUMMARY JUDGMENT

Defendants Board of Regents of the University of New Mexico, Scott Carroll, M.D., Teresa A. Vigil, M.D., and Paul Roth, M.D. ("Defendants") submit this reply in support of their motion to dismiss or for summary judgment (Document 3). As a matter of law, the Amended Complaint should be dismissed.

### RESPONSE TO PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Plaintiff's response (Document 15) to Defendants' Statement of Undisputed Facts does not raise any material disputed facts. The date on which Plaintiff received the final versions of the letters from the School of Medicine's Committee for Student Promotion and Evaluation (CSPE) is not material. There is no dispute about the fact that the letters were sent and the substance of the letters. Furthermore, the failure to attach the policy referred to in Dr. Carroll's

letter of January 24, 2013 (attached to Plaintiff's Affidavit No. 1 as Exhibit C) does not change the process available to Plaintiff. Plaintiff does not deny that he failed to take advantage of this additional level of appeal.

Pursuant to Fed. R. Civ. P. 56(c)(4), affidavits used to oppose a motion must "set out facts that would be admissible in evidence." Statements allegedly made to Plaintiff by Dr. Espey and other faculty members who are not parties to this lawsuit are hearsay and not admissible evidence. Defendants object to these allegations in the Plaintiff's Response (Document 15, p. 2) and to Plaintiff's Affidavit (Document 15-1), paragraphs 9, 11, 12, 13, 14, 15, 16, 19, 21, 22, 27, 28, and 32 to the extent that they contain statements of persons who are not parties to this case and are offered to prove the truth of the matter asserted. Fed. R. Evid. 801. They are not admissible evidence and therefore cannot dispute a fact in summary judgment. Fed. R. Evid. R. 802; Fed. R. Civ. P. 56(c)(2).

RESPONSE TO PLAINTIFF'S UNDISPUTED MATERIAL FACTS

Defendants dispute Plaintiff's paragraph No. 3. The post speaks for itself and is directed at particular people, those who "support the Democratic candidates."

Defendants dispute and object to paragraphs 7, 8, 9, 10, 11, 12, 18. These paragraphs are not supported by admissible evidence as required by Rule 56. They are supported by Plaintiff's affidavit, which, as noted above, contains statements of non-parties, offering them to prove the truth of the matters asserted. They are classic hearsay and not admissible under Fed. R. Evid. R. 802.

Defendants dispute paragraph 17. As shown by the CSPE letter, Plaintiff's Affidavit No. 1, Exhibit C, (Document 15-1), Plaintiff was warned that "further professionalism lapses. . . may result in adverse action such as dismissal from the UNM School of Medicine."

Paragraph 21 is not relevant or material. As noted in the Social Media Policy, (Exhibit 2 to Hickey Affidavit, Document 3-2), "UNMSOM does not routinely monitor personal websites or social media outlets."

ARGUMENT

I. The Board of Regents Have Not Been Named or Served as Individuals; the Board Is Not a Person under Section 1983

To clarify Defendants' argument in support of their motion to dismiss the Board of Regents, Defendants recognize that by removing this case to the federal court, they waived any Eleventh Amendment immunity that may have attached to them. *McLaughlin v. Board of Trustees of State Colleges of Colorado,* 215 F.3d 1168, 1172 (10th Cir. 2000). Thus, there is no *Ex Parte Young* issue raised by Defendants' motion.

However, "[a] cause of action under section 1983 requires that deprivation of a civil right by a "person" acting under color of state law." Just like the Board of Trustees in *McLaughlin,* the Board of Regents is an arm of the State of New Mexico (*Williams v. Board of Regents of University of New Mexico,* 990 F.Supp. 2d 1121, 1144 (D.N.M. 2014).) And just like the plaintiff in *McLaughlin,* Plaintiff here has not named the individual Regents and therefore "has failed to state a claim against a person covered by section 1983." *Id.* at 1172. *McLaughlin* further notes, "If Mr. McLaughlin had sued a state official instead of the Board, he could have argued the viability of his claim for prospective injunctive relief" citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989). *McLaughlin,* 215 F.3d at 1172, ftnt. 2.

Therefore, under *McLaughlin,* Plaintiff has not stated a claim against the Board of Regents for damages or prospective relief. The motion to dismiss the Board should be granted. Defendants concede that the individual Defendants may be sued under Section 1983 in their

3

official capacity for prospective relief. However, as discussed below, there are other grounds for denying any relief to Plaintiff from the individual Defendants.

II.     Defendants Carroll, Vigil and Roth Are Entitled to Qualified Immunity

    A.     Plaintiff's First Amendment Rights Have Not Been Violated

Plaintiff contends that the Court must apply *Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503 (1969), that *Tinker* prohibits the action taken by Defendants, and as such the law is clearly established and qualified immunity is not proper. *Tinker* applies to political speech on a secondary school campus, the Supreme Court holding that school officials may not prohibit such speech if it does not reasonably lead the school officials to "forecast substantial disruption of or material interference with school activities." *Id.* at 514. In contrast, Plaintiff engaged in speech with a political component, but totally off-campus. More importantly, Plaintiff was subject to the professional enhancement prescription because his posts were considered unprofessional in the medical profession. As explained in *Tatro v. University of Minnesota,* 816 N.W.2d 509, 519-20 (Minn. 2012):

> The *Tinker* substantial disruption standard does not fit the purposes of the sanctions here. The driving force behind the University's discipline was not that Tatro's violation of academic program rules created a substantial disruption on campus or within the Mortuary Science Program, but that her Facebook posts violated established program rules that require respect, discretion, and confidentiality in connection with work on human cadavers. . . .
>
> Thus, we are left with the question of the appropriate legal standard to apply to the University's regulation of Tatro's Facebook posts. In deciding the constitutional rights of students, the Supreme Court has explained that the "mode of analysis set forth in *Tinker* is not absolute" and that courts must consider " 'the special characteristics of the school environment.' " *Morse v. Frederick,* 551 U.S. 393, 405, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007). . .
>
> Consequently, we must consider the special characteristics of the academic environment of the Mortuary Science Program and its professional requirements when deciding the standard that applies.

Plaintiff was placed on a professional enhancement prescription because the School of Medicine believed that his Facebook post showed a lack of professionalism required of doctors. Whether the School acted properly must be determined in the light of the environment of the School of Medicine, charged with educating and training physicians who literally are responsible for the lives and well-being of patients in their care. In addition to the University's Respectful Campus Policy, the School of Medicine invoked its Social Media Policy which directs students of the School to "[e]xercise discretion, thoughtfulness and respect for your colleagues, associates and the university's supporters/community (social media fans)." Clearly, Plaintiff's post violates these policies and the professional standards embodied in them. The School of Medicine did not violate Plaintiff's First Amendment rights by enforcing the policies and imposing the prescription on him.

B. Any Constitutional Right Plaintiff May Have Was Not Clearly Established

As discussed above, *Tinker* does not clearly apply to Plaintiff's speech. The Court, in *Pompeo v. Board of Regents of the University of New Mexico,* 58 F.Supp. 3d 1187, 1190 (D.N.M. 2014), held that the plaintiff's First Amendment rights were clearly established in *Axson–Flynn v. Johnson,* 356 F.3d 1277, 1285 (10th Cir.2004) which held that "in the university setting, restrictions on school-sponsored speech must be justified by legitimate pedagogical concerns," applying *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 266 (1988) (Internal quotation omitted.) In *Pompeo,* a student paper critical of homosexuality was sanctioned. *Axxon-Flynn* involved a drama student who was encouraged to withdraw from an actor training program at the University of Utah when she repeatedly refuse to use profanity in classroom acting exercises on religious grounds. Here, there is no speech occurring in the classroom or in class assignments. These cases do not apply to the speech at issue here.

Commentators have recognized the lack of clearly established law in the area of online, off-campus speech:

> In the evolving area of law related to higher education students' online speech, court decisions demonstrate varying approaches regarding the appropriate legal standards to apply. Some courts have sought to stretch the Hazelwood [School District v. Kuhlmeier, 484 U.S. 260 (1988)] standards to accommodate issues raised by independent student speech involving potential curricular concerns, even when the speech occurs outside of a formal instructional context. As demonstrated in Snyder [v. Millersville University, No. 07-1660, 2008 WL 5093140 (E.D. Pa. Dec. 3, 2008)], for students enrolled in practicums and internships, the legal standards derived from the public employee speech cases have emerged as another option to define students' speech rights, one giving far-reaching authority to institutional officials over student speech in such settings. In contrast, when faced with circumstances not completely distinct from those at issue in Snyder, the two district court opinions in the Yoder case [Yoder v. Univ. of Louisville, No. 3:09-CV-205-S, 2009 WL 2406235 (W.D. Ky. Aug. 3, 2009) and on remand, 2012 WL 1078819 (W.D. Ky. Mar. 30, 2012)] sent additional legal paths to dealing with independent student speech raising curricular concerns. The Minnesota Supreme Court's decision in Tatro represents yet another approach, one mindful of investing colleges with too much control over independent student speech. Wading into this muddled situation, this Article now considers the issue of what legal standards courts should adopt when balancing legitimate institutional interests related to academic matters with the accompanying need to enforce rules suitable for higher education environments rather than ones predominately grounded in concerns at the elementary and secondary education levels.

Jeffrey C. Sun, Neal H. Hutchens & James D. Breslin, *A (Virtual) Land of Confusion with College Students' Online Speech: Introducing the Curricular Nexus Test,* 16 U.Pa.J. Const. L. 49, 86 (2013).  *See also* Emily Gold Waldman, *University Imprimaturs on Student Speech: The Certification Cases,* 11 First Amend. L. Rev. 382, 384-389 (2013), (recognizing no Supreme Court pure student speech case in the university context and disagreement in the lower courts on the proper framework for higher education cases, advocating a separate standard for professional training programs in universities.)

There is no clearly established law governing the facts of this case.  Qualified immunity is proper.

III. Plaintiff's Due Process Rights Were Not Violated As a Matter of Law

Contrary to Plaintiff's arguments, *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 84-85, (1978), provides the applicable due process requirements for the action taken by the School of Medicine. *See also Trotter v. Regents of Univ. of New Mexico*, 219 F.3d 1179, 1185 (10th Cir. 2000) ("due process clause requires no more than that the student have prior notice of faculty dissatisfaction with his or her performance and of the possibility of dismissal, and that the decision to dismiss the student be careful and deliberate." (internal quotation marks omitted)) The professional enhancement prescription was imposed for Plaintiff's lack of professionalism, an academic requirement for medical school. As noted in the School of Medicine's Due Process Policy, "[a]cademic requirements . . . include ethical and professional behaviors as well as educational achievement."(internal quotation marks omitted.)[1] Because the School was acting on a perceived deficiency in Plaintiff's academic performance, the less stringent procedural requirements of *Horowitz* apply. *Harris v. Blake,* 798 F.2d 419, 423 (10th Cir. 1986) (class attendance academic matter; student entitled only to the minimal procedures in *Horowitz); Ornelas v. Regents of Univ. of New Mexico*, 229 F.3d 1164 (table), 2000 WL 1179773 (10th Cir. 2000) (removal from internship class based on contentious, antagonistic and generally disruptive behavior was academic decision rather than disciplinary action; *Horowitz* applied).

In this case, Plaintiff was given notice of dissatisfaction and multiple opportunities to present his position. There is no evidence that the decision to impose the prescription was not careful and deliberate.

Furthermore, Plaintiff has not established any fact questions to defeat summary judgment

---

[1] Plaintiff objected to reference in Dr. Hickey's affidavit to the Due Process Policy because the policy was not attached. A copy is attached hereto.

on the grounds that Defendants' actions violated his substantive due process rights. As explained in *Harris,* the Supreme Court's decision in *Regents of the University of Michigan v. Ewing,* 474 U.S. 214 (1985) governs this question: "We must therefore review the record to determine whether the evidence, viewed most favorably to Harris, unmistakably demonstrates that defendants' decision was "made conscientiously and with careful deliberation," or whether the record shows "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."' *Harris v. Blake*, 798 F.2d 419, 424-25 (10th Cir. 1986) (quoting *Ewing,* 474 U.S. at 225.) Plaintiff's admissible evidence submitted in response to this motion does not come close to meeting this standard. Even considering the inadmissible hearsay, Plaintiff has not established that the decision was made without careful deliberation or was a substantial departure from academic norms.

Plaintiff has not established that there was an impermissible ulterior motive in Defendants' actions. *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1293 (10th Cir. 2004) ("we may override an educator's judgment where the proffered goal or methodology was a sham pretext for an impermissible ulterior motive.") Asking Plaintiff in the course of the CSPE hearing whether Plaintiff was prejudiced against Jews or people of color certainly does not show an impermissible ulterior motive on the part of the CSPE. Moreover, there is no evidence that the questions of one member of the CSPE tainted the decision of the Committee as a whole.

## CONCLUSION

Defendant Board of Regents is not a person under Section 1983. The individual Defendants in their individual capacities are entitled to qualified immunity from Plaintiff's claims. His First Amendment rights were not violated and he was given all process due under

the Fourteenth Amendment. The individual defendants should be dismissed in their official capacity as well because no constitutional violation has been shown. The First Amended Complaint should be dismissed.

Respectfully submitted,

MONTGOMERY & ANDREWS, P.A.

By: ___/s/ _Walter J. Melendres___
    Walter J. Melendres
    Carolyn A. Wolf
Post Office Box 2307
Santa Fe, NM 87504-2307
(505) 982-3873
wmelendres@montand.com
cwolf@montand.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2016, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey L. Baker
Renni Zifferblatt
20 First Plaza Ctr. NW, Ste. 402
Albuquerque, NM 87102
jeff@bzjustice.com
renni@bzjustice.com

 /s/ Walter J. Melendres
Walter J. Melendres